Good morning and may it please the Court. Brandon Sample, Court Appellant, Robert Barroca. With the Court's permission, I'd like to reserve two minutes for rebuttal. Sure. The key focus of this appeal is whether a grant of 3582 relief would result in an amended sentence that is based on Section 2D1.1 of the Guidelines versus the career offender provision of the Guidelines. The District Court in this case held that Barroca is ineligible for Amendment 782 relief because he is a career offender. But the original sentencing judge, who has since retired, made conflicting and inconsistent statements at the time of sentencing about whether Barroca is a career offender. For example, the judge stated at the request of the clerk that Barroca's offense level was 39 with a criminal history category of 6. The judge also spoke approvingly of the PSR. But a finding that Barroca's offense level was 39, criminal history category 6, would have produced an advisory guideline range of 360 months to life. The sentence imposed, however, was 240 months. Moreover, an offense level of 39, according to the PSR, was not the result of the career offender guideline, but rather Section 2D1.1. The career offender guideline produced a base offense level of 34, which would have resulted in a guideline range of 262 to 327 months. And again, the sentence imposed was 240 months. The government, recognizing the original sentencing court's sentence did not comport with the PSR, specifically asked the judge whether or not the sentence represented a departure. And in response, the original sentencing judge cryptically stated, and I quote, I am not sure that a downward departure is necessary or appropriate in the event that Mr. Horowitz is correct with respect to his arguments, but a sentence of 240 months is within the range, even if it is in line with the sentencing range in the event that Mr. Horowitz has corrected his calculations. Mr. Horowitz. Excuse me. Doesn't the 240-month sentence just show that he was imposing the sentence that he thought was appropriate and clearly wasn't a guideline sentence, which he had the right to do? And therefore, you really can't make that much out of the 240 months, can you? It's our position in this appeal, Your Honor, that when the government asked for clarification about whether or not the sentence constituted a departure, and the judge basically said that this sentence is possibly based on the objections of sentencing counsel at the time, that it's not clear that we can say that it is actually a departure, because the court could have specifically said that and said, no, it is a departure. It seemed as if the original sentencing judge was giving weight, actually, to some of the objections that were made by Baroka's counsel at sentencing. And if that's true, then that conflicts with the other assertion, or at least the district court's conclusion, that there was a finding that it was career offender because the guideline ranges don't match. Why don't you think that that response was just saying, even if I were to agree with the objections, which I don't, I'd give the same sentence anyway? It seems like it sounds more like that, doesn't it? I mean, that's one way that it could be interpreted. But, of course, it's our position that if the court wanted to make that clear, that it was actually giving a departure, that it would give this 240-month sentence in the case as a result of departure, it would have said that very clearly as opposed to equivocating about the basis for its sentence. Counsel, let's just – go ahead, Judge Bucklow. No, go on. Counsel, just so I can understand, at the end of the day, where you're trying to get us to go. So let's say we agree with you that the sentencing court actually sentenced under 2D1.1 rather than career offender. So that's a two-level difference. At the end of the day, as I see this case, it's about two levels. Do you agree? Correct, Your Honor. So if it's about two levels, then even if we go through all of these calculations or the guidelines, aren't we still looking at 360 to life? It's not because we're running to the same issue about whether or not the judge – the judge did not resolve the objections that were also made about the drug quantity. So we're running into the same issue of whether or not this 240-month sentence also constitutes an implicit potential finding that there was credibility about the drug quantity objections. And since a level 39, which would constitute the total offense level after consideration of the drug quantity and other upward adjustments, doesn't match with 240 months, then you get to the conclusion that you cannot also rely on what's in the PSR with respect to the drug amounts that are there. But if your argument is that there's a question about the drug amount and that the judge actually tied his sentence to a strict guideline reading, which is what you want us to conclude, I think, I mean, you'd have to find – there was almost no meth in this case to get to 240 in this case, wouldn't you, with this guy's criminal history? Well, the issue there is is that there was – there were objections that were made at the sentencing about what kind of meth, if it was L meth or D meth, and there was objections about which version of the guidelines actually to apply. And there was argument made in the district court in the context of this specific proceeding that the district – the modification court should utilize the older version of the guidelines, like the 1994 version of the guidelines, because it would have produced, like, a different – But, I mean, it seems to me that's getting a little far afield from what this appeal is about. I mean, the appeal is about the applicability of 782. All the objections about drug quantities could have been raised in the initial appeal, correct? They could have been. And they were not? They were not. So how do we get to that question about whether it was L meth or, you know, chemicals or precursors? I mean, that could have been litigated 10 years ago. Right. So, I mean, we think that we get there based on the court's recent decision in Mercado Moreno, where the court had remanded – there was, I believe, it was an appeal by the government, and there was a situation about whether or not the defendant – the district court, the modification court would be allowed to make additional findings with respect to drug quantity when there are inconsistencies about the finding or the findings are not clear on the drug quantity. So we're not – I mean, it's – we recognize that the context of the 3582 proceeding is limited and that it's not a full resentencing. But when we're confronted with a situation potentially where the drug quantity findings are – there are no findings at the sentencing, if you accept the premise that the 240-month sentence is – creates ambiguity on that point. I'm not sure I understood your answer, though, to Judge Owens' question about that. So you said it could have been an old version of the guidelines and various things that were contested, but do you have a path that gets you to 240? Because I didn't really hear the answer to that. Like, can you tell us how you get to 240? Well, if we assume that – if we assume that 240 months is a sentence that was imposed based on the guidelines by the district court, then there's one of two things that could be at play there. That could be an implicit conclusion that the district court had found that the offense level was either a 33 or a 34 in criminal history category 5, which would give an – if it was a 33, for example, the admitting guideline range would be 210 to 262 months. So there would give some – there would be some play there. No, but on the original sentence, do you have a theory by which 240 is in the range that has some amount of meth still in the offense and everything else? I don't know how you get the pieces to put together the original sentence. Right. Well, I don't know the amount – the quantity offhand that would produce that offense level, but if – But don't you need to tell us that in order to show us why it makes a difference what the quantity is? I mean, if everyone agrees there's X quantity and X quantity gives them the same sentence, then I don't see why we'd have a hearing about the quantity. Well, that's an issue that wasn't really briefed in the appeal because the district court, when it considered the modification, whether or not to grant 35 to 82 relief, it did so exclusively on the career offender issue. So the way that we had approached this appeal was about whether or not a remand was in order for the district court to be able to address that in the first instance. But we wouldn't do that if it doesn't matter. Right. But if there's still – we're still left with the question about whether or not there's this inconsistency and this ambiguity, and so we believe that we should have the opportunity to be able to put on that evidence in the district court on remand. And as opposed to – Does it make any difference at all as long as the criminal history category is six, which the district court, despite some statements, clearly did conclude? If this Court concludes that the criminal history category was six and accepts some kind of implicit idea that he found that he was a career offender, then the 240-month sentence would be below what the career offender guideline range is. And it's absolutely required that the sentence must be based on 2D1.1 for him to be able to get relief. So if there is a conclusion by the Court that he's a career offender, then there's no opportunity for him to be able to receive relief in light of the amendment because the 240-month sentence is below what the career offender guideline would call for. So the entirety of the appeal turns on this Court accepting the premise that the district court statements about the 240-month sentence creates ambiguity such that a remand is in order for the modification court to further consider the other issue with respect to drug quantity. All right, counsel. We'll give you some time in rebuttal. Thank you so much. Good morning. May it please the Court. I'm Douglas Wilson on behalf of the United States. As counsel has pointed out, the entire issue in this case is whether the defendant was a career offender in 2006. In our view, the district court clearly found that he was a career offender. First of all, and most obviously, the district court stated that the offense level was 39 and the criminal history category was 6. That offense level comes from 2D1.1, but 4B1.1 states that the court is to use the offense level from the applicable guideline if that offense level from that guideline is higher. So the court found the career offender offense level for this defendant by using 2D1.1. Underwaters, moreover, this court may rely solely on Section 2D1.1 as long as the court finds that the defendant is a career offender. Second, the court could not have found that the defendant, excuse me, the court could not have applied criminal history category 6 unless it found that the defendant was a career offender. The defendant had only enough criminal history points to get to criminal history category 5, and therefore by finding that he's 6, the court is definitely finding that he's a career offender. And third, the pre-sentence report found that he was a career offender, both in the offense level and in discussing the criminal history category, the court, the pre-sentence report found that he was a career offender. And the court, although it did not specifically say it was adopting that, it said it was imposing the sentence consistent and in conformity with the pre-sentence report. So it is finding that the defendant is a career offender. Now, you said, Counselor, that he cannot take advantage of Amendment 782 because he is a career offender. That's correct. And what authority is there that says that succinctly, that that is the case? This Court has repeatedly said that. It says that in the first Waters decision at 648 F. 3rd. It said that in the Wesson case. It said that in the, I believe, in the Charles case, which is at 749 F. 3rd. Pleasant also, I believe, was a career offender case, which was overruled in part by Davis. But I believe it also says that the defendant is a career offender. But isn't the real reason, isn't the reason here that his problem here is that when you reduce, even if you, the guidelines are only going to go down under 237 from 39. And so it's still above the career offender guideline. Isn't that the actual reason? Our position, Your Honor, is that 4B1.1 states that one should use the offense level from the guideline, which is 2D1.1, for the career offender. And so our position is that he, that the district court found that he was a career offender with an offense level of 39. So he doesn't, we don't even look at the reduction under the amendment because of that. But getting back to Judge Bucklow's question, I think normally I understand your point that if the career offender is higher than the 2D1.1, then they can't take advantage of it because they're saying, look, you're a career offender and you can't basically be excused from being a career offender through Amendment 782. This is the odd case where the guideline sentence is actually higher than a career offender. There aren't many of these left anymore, but there are still some. That's correct, Your Honor. In this bizarre situation, wouldn't, maybe it makes no difference, but wouldn't 782 still give him relief at least two levels off? No, Your Honor. I don't think so because 4B1.1 is clear. 4B1.1 is the career offender guideline, and it is clear that the court should use the offense level from the applicable guideline if it is higher than the career offender guideline, career offender offense level. So if the drug, if the guideline based on the drugs is higher than the career offender, then why don't you use the one based on drugs? And so then it might matter whether the amendment might matter. Well, under the career offender guideline, the amendment doesn't matter. Maybe I'm not following the court's question. Well, I think, I just think maybe you're overreading these cases, Waters and the other ones you're citing, because did any of them involve a situation where the career offender guideline put the sentence lower than what the amendment affected, the drug-based guideline? I don't believe so, Your Honor. So then how do you think any of those cases control this case? I, well, I think that they control this case to the extent that the finding that the district court in 2006 found the defendant as a career offender, and I believe those cases control. But I believe that. But those cases all were where the career offender guideline was higher, and we're supposed to apply the higher guideline. So that is why the career offender dominated there. But here it's flipped. So I don't think we have a case that talks about what happens when it's flipped. I don't believe the court does. But the guidelines are very clear that under 4B1.1 that the offense level for a career offender is the offense level from the applicable guideline if that applicable guideline is higher. So the offense level from 2B1.1 is the career offender offense level. So this defendant is a career offender even though the district court used the 39. And you don't think the amendment affects that guideline that gets incorporated at that point? I don't think the amendment affects the guideline because the district court found that he was a career offender. It doesn't really matter what his offense level was. But it sounds like you're saying your interpretation of the career offender guideline is that it incorporates the other guideline, the other applicable guideline. Yes, Your Honor. And so why wouldn't the amendment affect what's incorporated? Because the district court found that he is a career offender, and this court has repeatedly stated, and the guidelines make clear, that a career offender is not to get relief under Section 3582C2. But never in a context where it's flipped like this. There's no case that I'm aware of from this court in which the, as you said, the offense level was flipped. But he is, the defendant still is a career offender under Section 4B1.1, and therefore the career offender guideline. I think Waters actually might have been this case. Waters actually might have been at this situation here where the drug quantity was slightly higher. But we can go back and look at that. You might be right, Your Honor. I've read Waters many times, but I would have to check that for sure. And that's something that we can verify. Let me ask you just kind of a step-out type question in this case. The indictment in this case was 1994. He pled guilty or was convicted of some gun charge in 1994. 2004, an 851 is filed, and he pleads guilty in 2004. Can you briefly explain, to the best of your knowledge, what happened in this case? I've got to say, I've never seen anything like this before. Well, Your Honor, I had not seen anything like this before either. And, in fact, I was the appellate chief in 2000 in the Northern District of California, and this case was around then. And then I left for 17 years and came back, and it was still around at that point. So this case has been around for a long time. There was an interlocutory appeal to this court. The district court severed the gun counts from the drug counts, and the gun counts were tried first. That took some time. I can't account for all of the time, but there was a substantial amount of time involved in the severance and in the interlocutory appeal. And then he did not file the 3582 until, I think, 2015. So there was a delay where he just was sitting in prison during that period. The only other thing I would like to address is the possibility of a remand. Even if this court did remand, I don't think this court's case in Mercado Moreno makes any difference. In that case, which is an 869 F3rd 942, and it was briefed. It came down after the briefing in this case was complete. The court of appeals, this court, said that the district court may supplement its original finding, quote, unquote, only when the supplemental findings are necessary to determine the defendant's eligibility under Section 3582C2. And our position is that the district court did not need to supplement the findings in this case because it's clear that the district court found the defendant is a career offender. So this is not a case where a remand is necessary to supplement the findings under Mercado Moreno. Anything further, Judge Bucklow?  Thank you, counsel. Thank you. Two minutes, sir. I would simply like to tack on to what the court's questions about which version of the guidelines, if the career offender is higher than the 2D1.1. I think the cases from outside the circuit are pretty clear that if the guideline for 2D1.1 is higher than the career offender, then that is the guideline that is utilized for purposes of Amendment 782 because it gets back to the central question about whether or not this amendment is going to result in a sentence that is based on 2D1.1 as opposed to the career offender. And as I indicated previously, the career offender in this case had a base offense level of 34. So there is a substantial difference there. Those are the cases added in your brief? Correct. Okay. And, you know, for the other reasons we've already indicated, we believe that a remand should be given to the district court so that way this issue about drug quantity and whether or not the district court should rely upon the two levels down only that's in the PSR versus needing to supplement its findings as indicated in Mercado Moreno is appropriate. The district court did not have an occasion to address anything with respect to drug quantity because it seemed to have simply made the determination that because he's a career offender, a career offender alone, that he is not entitled to any kind of relief under Amendment 782. Can you remind me when he's due out? Assuming you don't prevail here, when is he due out? I believe he has a couple more years left before release, Your Honor. Thank you. If the court does not have any further questions, thank you, Your Honor. Thank you very much, counsel. This matter is submitted. We appreciate the argument from you both.
judges: Owens, Friedland, Bucklo